**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

WATERMARK CONSTRUCTION, L.P.,

    Plaintiff,

v.                                  Case No: 6:17-cv-1814-Orl-40TBS

SOUTHERN-OWNERS INSURANCE COMPANY, APACHE STUCCO, INC. and OAK MEADOW LIMITED PARTNERSHIP,

    Defendants.
_____/

## **ORDER**

The cause comes before the Court on the following:

1. Defendant Southern-Owners Insurance Company's Motion to Dismiss Count II of the Amended Complaint for Failure to State a Claim (Doc. 15), filed August 10, 2017;

2. Plaintiff Watermark Construction, L.P.'s Response to Defendant's Motion to Dismiss Count II of the Amended Complaint (Doc. 20), filed August 29, 2017;

3. Defendant's Reply in Favor of Its Motion to Dismiss Count II of the Amended Complaint (Doc. 23), filed September 5, 2017;

4. Plaintiff/Counter-Defendant Watermark Construction, L.P.'s Motion to Dismiss Defendant/Counter-Plaintiff Southern-Owners Insurance Company's Counterclaim/Crossclaim for Declaratory Relief (Doc. 21), filed August 31, 2017;

5. Southern-Owners Insurance Company's Response in Opposition to Watermark Construction, L.P.'s Motion to Dismiss Counterclaim/Crossclaim (Doc. 25), filed September 7, 2017;

6. Defendant Oak Meadows L.P.'s Motion to Dismiss in Part for Lack of Subject Matter Jurisdiction or, in the Alternative, to Stay (Doc. 63), filed December 5, 2017;

7. Southern-Owners Insurance Company's Response in Opposition to Oak Meadow's Motion to Dismiss/Stay Crossclaims (Doc. 65), filed December 18, 2017;

8. Plaintiff Watermark Construction, L.P.'s Motion for Partial Final Judgment as to Apache Stucco, Inc. (Doc. 64), filed December 6, 2017; and

9. Southern-Owners Insurance Company's Response to Watermark's Motion for Partial Final Judgment as to Apache Stucco (Doc. 66), filed December 19, 2017.

The parties have completed their briefing and the Court is otherwise fully advised on the premises. The matter is therefore ripe for review.

## I. BACKGROUND

### A. WaterMark's Amended Complaint[1]

This action relates to a construction defect lawsuit filed in Brevard County, Florida, state court on November 13, 2014. In that suit, Oak Meadows Limited Partnership ("Oak Meadows") alleged that WaterMark Construction, L.P. ("WaterMark") breached a

---

[1] This account of the facts is taken from WaterMark's Amended Complaint (Doc. 10), the factual allegations of which the Court accepts as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

September 13, 2007, contract involving WaterMark's work developing a multi-family apartment complex known as Oak Meadows Apartments. Oak Meadows alleged that WaterMark failed to repair or pay for damages caused by construction defects.

Thereafter, WaterMark brought a third-party claim against Apache Stucco, Inc., ("Apache"), seeking reimbursement or indemnity for Oak Meadows' claims because Apache performed the allegedly defective work pursuant to a subcontract with WaterMark. The third-party claim averred that WaterMark is entitled to common-law and contractual indemnification from Apache for any liability WaterMark may face in the state court suit.

WaterMark's rights and obligations vis-à-vis an insurance policy are at the heart of this action. Southern-Owners Insurance Company ("Southern-Owners") issued to Apache an insurance policy (the "Policy") with effective dates of January 5, 2008, through January 5, 2009. WaterMark was named as an additional insured in the Policy. The Policy included $1,000,000 general liability limits per occurrence, with an aggregate $2,000,000 limit. The Policy generally provided insurance coverage for "property damage" for which the insureds may be liable.

Pursuant to the Policy, Southern-Owners collected an "$1154 premium for plastering or stucco work: premises or operations; and an $812 premium for plastering or stucco work: products/completed operations." (Doc. 10, ¶ 15). Critically, the Policy also included Endorsement 55188, titled Exterior Finishing System and Stucco Exclusion (the "Stucco Exclusion"). The Stucco Exclusion states:

> The insurance does not apply to any claim, "suit," action or proceeding for "bodily injury," "property damage," "personal injury," or "advertising injury" which is in any related to or arising out of an "exterior finishing system" or exterior "stucco" application.

(Doc. 10, ¶ 17). WaterMark alleges that Southern-Owners' receipt of premiums for coverage relating to stucco work conflicts with the Stucco Exclusion, which denies coverage for claims related to stucco application.

WaterMark initiated the instant action by filing a Complaint on May 19, 2017. (Doc. 1). WaterMark filed an Amended Complaint on July 28, 2017, naming three Defendants: Southern-Owners, Apache, and Oak Meadows. The Amended Complaint proceeds in two Counts.

In Count I, WaterMark seeks a declaratory judgment that the Stucco Exclusion does not operate to bar coverage for the stucco-related claims giving rise to the state court suit. In support, WaterMark avers that it reasonably relied upon the Policy covering claims arising from stucco-work when it entered into the subcontract with Apache. This reliance was based in part on the premiums paid under the Policy for "stucco work." WaterMark characterizes the coverage under the Policy as "illusory," to the extent the Stucco Exclusion is applied to bar insurance coverage for stucco-related claims.

WaterMark brings an equitable claim for reformation in Count II. Specifically, WaterMark alleges that the parties to the Policy agreed that plastering and stucco work would be covered, and that it was the "intent of the Policy" to cover such work. Moreover, the inclusion in the Policy of the Stucco Exclusion "was erroneous and contrary to the parties' intentions in entering into that insurance contract." (Doc. 10, ¶ 44). Two grounds are offered as warranting the requested relief: (i) mutual mistake, or, in the alternative (ii) unilateral mistake by Apache and/or WaterMark, coupled with Southern-Owners' inequitable conduct of accepting premiums for nonexistent coverage. Therefore,

WaterMark seeks reformation of the Policy to conform the agreement to the intention and agreement of the parties—namely, by excising the Stucco Exclusion from the Policy.

### B. Southern-Owners' Counterclaims/Crossclaims[2]

On August 10, 2017, Southern-Owners answered the Amended Complaint. In its answer, Southern-Owners brought counterclaims against WaterMark, and crossclaims against Apache and Oak Meadows, seeking declaratory relief.

The Policy went into effect January 1, 2003, and was renewed annually until it was cancelled January 1, 2011. Southern-Owners cites to several sections of the Policy in support of its position that it is not liable for the defective stucco work. First, Southern-Owners cites the Stucco Exclusion[3] that WaterMark identified above. Second, Southern-Owners cites the Fungi or Bacteria Exclusions[4] (the "Fungi Exclusion"), which states:

> A. Under Section I – Coverage, Coverage A. Bodily Injury and Property Damage Liability, 2. Exclusions, the following exclusions are added:
>
> 1. "Bodily injury" or "property damage" arising out of, in whole or in part, the actual alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria, whether airborne or not, on or within a building or structure, including its contents. This exclusion applies whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.
>
> 2. Any loss, cost, or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of or in any way responding to or

---

[2] This account of the facts is taken from Southern-Owners' Answer, Affirmative Defenses, and Counterclaim/Crossclaim for Declaratory Relief (Doc. 16). The Court accepts the allegations of Southern-Owners' Counterclaim/Crossclaim as true when considering motions to dismiss. *Whitney Info. Network v. Gagnon*, 353 F. Supp. 2d 1208, 1210 (M.D. Fla. 2005).

[3] The Stucco Exclusion is contained in "all relevant [P]olicies." (Doc. 16, ¶ 29).

[4] The Fungi or Bacteria Exclusions are contained in "all relevant [P]olicies. (Doc. 16, ¶ 30).

      assessing the effect of, "fungi" or bacteria, by the insured or by any other person, entity or governmental authority.

Third, Southern-Owners cites to sections outlining the "property damage" coverage afforded under the Policy. Among these sections is an exclusion for "products-completed operations hazard." Finally, Southern-Owners references various endorsements from the 2009–2010, 2010–2011, and 2011–2012 Policies relating to coverage exclusions specific to additional insureds.

      Southern-Owners' Answer and Counterclaim/Crossclaim asserts six counts. Count I seeks a declaratory judgment that Southern-Owners does not owe a duty to defend or indemnify to Apache or Watermark due to the Stucco Exclusion. Count II requests a declaratory judgment that Apache and WaterMark are not entitled to coverage under the Policy for damages caused by "fungi" or other bacteria pursuant to the Fungi Exclusion. Count III seeks a declaratory judgment that Southern-Owners is not liable under the Policy for damages that occurred after the January 1, 2011, cancellation date. Count IV requests a declaratory judgment that Southern-Owners is not liable for repair or replacement of the insured's defective stucco work, which does not constitute "property damage" covered by the Policy. Count V seeks a declaratory judgment that Southern-Owners is not liable for "'property damage' to 'you[r] work' arising out of it or any part of it." Finally, Count VI requests a declaratory judgment that the Policy does not apply to additional insureds for the "products-completed operations hazard." Count VI further alleges that all of the damages in this action arise out of the "products-completed operations hazard," thus Southern-Owners does not owe a duty to defend or indemnify WaterMark under the Policy.

### C. Pending Motions

There are presently four pending motions before the Court. First, Southern-Owners moved to dismiss WaterMark's reformation count for failure to state a claim. (Doc. 15). Second, WaterMark moved to dismiss, or stay, Southern-Owners' Counterclaim as premature. (Doc. 21). Third, Oak Meadows moves to dismiss Southern-Owners' Crossclaims for lack of subject matter jurisdiction. (Doc. 63). Fourth and finally, WaterMark moves for entry of a default judgment against Apache as to Count I of the Amended Complaint. (Doc. 64).

## II. STANDARD OF REVIEW

A complaint (or counterclaim)[5] must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). Thus, in order to survive a motion to dismiss made pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Though a complaint need not contain detailed factual allegations, mere legal conclusions or recitation of the elements of a claim are not enough. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts must also view the

---

[5] A motion to dismiss a counterclaim is evaluated in the same manner as a motion to dismiss a complaint. *Whitney Info. Network v. Gagnon*, 353 F. Supp. 2d 1208, 1210 (M.D. Fla. 2005).

complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994) (per curiam).

"A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

### III. DISCUSSION

#### A. Motion to Dismiss Count II of WaterMark's Amended Complaint

Southern-Owners moves to dismiss Count II of WaterMark's Amended Complaint—which asserts a reformation claim—for failure to plead with particularity the fraud or mistake necessitating reformation. (Doc. 15).

Under Florida law,[6] to state a claim for reformation, "the complaint must allege that a contract fails to express the agreement of the parties as a result of (1) a mutual mistake or (2) a unilateral mistake by one party coupled with the inequitable conduct of the other party." *Barber v. Am.'s Wholesale Lender*, 542 F. App'x 832, 837 (11th Cir. 2013) (per curiam). Reformation will not be granted based on unilateral mistake absent "clear and convincing proof of fraud or inequitable conduct by the other side." *Barber*, 542 F. App'x at 937.

---

[6] This case is before the Court pursuant to diversity jurisdiction. In a diversity action, a district court applies the substantive law of the forum in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Because WaterMark's reformation claim includes elements of mistake and fraud,[7] it must meet the pleading standards imposed by Rule 9(b) in addition to Rule 8.[8] Claims asserting mistake must include "specific allegations identifying the factual basis supporting each of the elements of [the plaintiff's] claim of mistake." *Barber v. Am.'s Wholesale Lender*, No. 8:12–cv–1124–T–27TBM, 2013 WL 1149316, at *4 (M.D. Fla. Mar. 19, 2013).

"A mistake is mutual when it is shown that the parties agreed on one thing and when they put it in the contract they said something different." *Blumberg v. Am. Fire Ins. & Cas. Co.*, 51 So. 2d 182, 184 (Fla. 1951). Thus, in order to successfully plead a claim for reformation based upon a mutual mistake, WaterMark must allege particular facts that demonstrate that there was a mistake shared by both WaterMark and Southern-Owners.

The Court finds that Count II contains sufficient allegations to survive Southern-Owners' motion to dismiss. WaterMark alleges that the parties had an agreement, and pursuant to that agreement, intended the Policy to provide coverage for property damages arising from stucco work. Notwithstanding that mutual agreement and intent, the Policy contained a Stucco Exclusion, which all but eliminated insurance coverage for damages arising from stucco-related work.[9]

---

[7] Specifically, the Amended Complaint alleges in conclusory fashion the presence of mutual mistake, or alternatively, unilateral mistake (by Apache and WaterMark) and inequitable conduct (by Southern-Owners). (Doc. 10, ¶¶ 47–48).

[8] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

[9] Southern-Owners repeatedly argues that Count II fails to establish mistake because the Policy in fact afforded coverage for damages arising from stucco work in certain situations. (Doc. 15, p. 4; Doc. 23, pp. 3–4). Assuming *arguendo* that Southern-Owners is right in this regard, the availability of *some limited* stucco coverage does

Reformation will not be granted based on unilateral mistake absent "clear and convincing proof of fraud or inequitable conduct by the other side." *Barber*, 542 F. App'x at 937. Count II of the Complaint also states a plausible reformation claim on the alternative theory of unilateral mistake. Accordingly, Southern-Owners' motion to dismiss Count II is denied.

B.  **Motions to Dismiss Southern-Owners' Counterclaims/Crossclaims for Declaratory Relief**

Both Oak Meadows and WaterMark assert that Southern-Owners' declaratory judgment claims relating to its duty to indemnify various insureds should be dismissed, or stayed, pending resolution of the state court case. In response, Southern-Owners argues that dismissal would be inappropriate because (i) its counterclaims and crossclaims are compulsory, and (ii) the Florida Supreme Court in *Higgins v. State Farm Fire & Casualty Co.*, 894 So. 2d 5 (Fla. 2004), held that insurers should be entitled to a prompt determination of coverage.

Determinations of an insurer's duty to defend and duty to indemnify an insured are necessarily separate inquiries. "[A]n insurer's duty to defend is separate and distinct from its duty to indemnify, and is more extensive." *First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co.*, 695 So. 2d 475, 476 (Fla. 3d D.C.A. 1997) (per curiam). An insurer's duty to defend claims against an insured is determined by the terms of the policy and allegations of the complaint. *Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So. 2d 533, 536 (Fla. 1977). "By contrast, the duty to indemnify is narrower and is determined by the

---

not demonstrate the absence of mistake, especially in light of the undeniably broad Stucco Exclusion.

10

underlying facts adduced at trial or developed through discovery during the litigation." *U.S. Fire Ins. Co. v. Hayden Bonded Storage Co.*, 930 So. 2d 686, 691 (Fla. 4th D.C.A. 2006). Furthermore, there can be no duty to indemnify an insured absent a finding that the insured is liable to a third party.

"Because an insurer's duty to indemnify is dependent on the outcome of a case, any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001); *see also Interstate Fire & Cas. Co. v. McMurry Const. Co.*, No. 6:16–cv–841–Orl–41TBS, 2017 WL 821746, at *3 (M.D. Fla. Mar. 2, 2017) (collecting cases). Courts in this district have been cautioned against exercising jurisdiction over declaratory judgment actions where the "apportionment of insurance coverage may never arise to the lack of a judgment establishing the liability of the insured." *Edwards v. Sharkey*, 747 F.2d 684, 686 (11th Cir. 1984) (per curiam). "Where a premature request for declaratory relief regarding the duty to indemnify is joined to a ripe request for declaratory relief regarding the duty to defend, a well-accepted practice is to retain jurisdiction over the latter request and stay, but not dismiss, the premature request." *Hartford Fire Ins. Co. v. Weathertrol Maint. Corp.*, No. 16-24509-CIV, 2017 WL 5643298, at *5 (S.D. Fla. Feb. 21, 2017).

Moreover, parties do not have a *right* to a declaratory judgment. "The Declaratory Judgment Act is 'an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant.'" *Ameritas v. Variable Life Ins. Co.*, 411 F.3d 1328, 1330 (11th Cir. 2005) (per curiam) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)). The United States Supreme Court has stated that "it would be uneconomical as

well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Wilton*, 515 U.S. at 495.

Because the duty to indemnify claims brought by both WaterMark and Southern-Owners are unripe pending the resolution of the underlying state court litigation, the Court will stay these claims. WaterMark's Amended Complaint seeks (i) a declaratory judgment that the Stucco Exclusion does not bar coverage on the underlying state court claims, and (ii) reformation of the Policy. (Doc. 10). The Court construes Count I of WaterMark's Amended Complaint as seeking declaratory judgments as to both Southern-Owners' duty to defend *and* duty to indemnify.[10] As to Southern-Owners' Counterclaim/Crossclaim, only Counts I and VI seek declaratory judgments regarding the duty to defend.[11] The claims regarding Southern-Owners' duty to defend, and WaterMark's reformation claim, may proceed.[12]

---

[10] Count I seeks a declaration that the Stucco Exclusion "does not apply to [the underlying state court claims]." (Doc. 10, pp. 6–7). Moreover, WaterMark notes in a response brief that Southern-Owners "denied Watermark *a defense* based upon" the Stucco Exclusion, and that WaterMark's claims were "narrowly tailored and timely given that WaterMark (itself or through its insurers) is incurring significant expenses *defending a claim for which it is entitled to a defense under the Southern-Owners Policy*." (Doc. 21, ¶¶ 2–3 (emphases added)).

[11] (Doc. 16, ¶¶ 44, 70). All Counts, including Counts I and VI, seek a declaration regarding Southern-Owners' duties to indemnify. (*Id.* ¶¶ 40–70).

[12] To the extent Count I of WaterMark's Amended Complaint requests a declaration as to Southern-Owners' duty to defend, it may proceed. Similarly, Counts I and VI of Southern-Owners' Counterclaim/Crossclaim may proceed insofar as they request duty-to-defend declarations. Finally, WaterMark's reformation claim may proceed. The remaining duty to indemnify claims are stayed pending resolution of the underlying state court action.

With respect to Southern-Owners' arguments regarding the compulsory nature of its counterclaims and crossclaims, a stay will merely delay an ultimate determination. Further, the *Higgins* case does not prevent this Court from entering a stay for two reasons. First, federal courts sitting in diversity are required to apply federal procedural law, and the Declaratory Judgment Act is procedural in nature. *Interstate Fire*, 2017 WL 821746, at *4. Second, the majority in *Higgins* noted that it may be necessary in some cases for the "duty to defend issue [to] be resolved early but the insurance indemnity action abated until after the underlying . . . action is final[.]" *Higgins*, 894 So. 2d at 17. That is the approach this Court finds to be most provident.

The Court also doubts that a live "case" or "controversy" is presented by the parties' declaratory judgment claims as to Southern-Owners' duty to indemnify. Southern-Owners and WaterMark "ask[] the Court to issue a declaration regarding [Southern-Owners'] duty to indemnify, in the hypothetical 'potential' event that [WaterMark] is found to be liable in the underlying case. This amounts to nothing more than a request for an impermissible advisory opinion." *Great Am. Assurance Co. v. Walters*, No. 3:15–cv–1008–J–38JBT, 2015 WL 13567713, at *3 (M.D. Fla. Oct. 7, 2015); (citing *Jacksonville Prop. Rights Ass'n v. City of Jacksonville*, 635 F.3d 1266, 1276 (11th Cir. 2011)).

### C. Motion for Partial Final Judgment as to Apache

WaterMark next moves for a default judgment pursuant to Rule 55(b) against Apache with respect to Count I of the Amended Complaint. (Doc. 64). The Amended Complaint names Apache, Southern-Owners, and Oak Meadows as Defendants. (Doc. 10). On November 20, 2017, a clerk's default was entered against Apache. (Doc. 57). Southern-Owners opposes WaterMark's motion for a default judgment, asserting that

granting such a motion risks inconsistent judgments. (Doc. 66). Notably, in its motion, WaterMark expressed "no objection to the Court delaying any judgment against" Apache pending resolution of the claims against Southern-Owners and Oak Meadows. (Doc. 64, ¶ 12).

As a general matter, "a defendant's default does not in itself warrant the court in entering a default judgment." *Nishimatsu Const. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[13] "In cases involving more than one defendant, if there is a risk of inconsistent judgments, a judgment of liability should not be entered against a defaulting party alleged to be jointly liable with other defendants until the matter has been adjudicated with regard to all defendants." *Island Stone Int'l Ltd. v. Island Stone India Private Ltd.*, No. 2016 WL 9488685, at *1 (M.D. Fla. Dec. 20, 2016); *see also Gulf Coast Fans, Inc. v. Midwest Elecs. Imps.*, 740 F.2d 1499, 1512 (11th Cir. 1984) ("[W]hen defendants are similarly situated, but not jointly liable, judgments should not be entered against a defaulting defendant if the other defendant prevails on the merits.").

Here, entry of a default judgment against Apache as to Count I—which would entail a declaration that the Stucco Exclusion does not apply to bar coverage for the state court claims—would risk an inconsistent judgment if Southern-Owners ultimately prevailed on Count I. Accordingly, the Court will deny without prejudice WaterMark's Motion for Partial Final Judgment as to Apache (Doc. 64).

---

[13] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit that were handed down prior to October 1, 1981.

### D. Final Jurisdictional Note

The undersigned notes that this case may be a candidate for the Court to exercise its discretion under the Declaratory Judgment Act to refuse jurisdiction over the various declaratory judgment claims asserted in this matter. *See Ameritas v. Viable Life Ins. Co.*, 411 F.3d 1328, 1330–31 (11th Cir. 2005). However, based on the limited record before the Court, the undersigned is not prepared to conduct a full *Ameritas* analysis. The Court is cognizant of the concerns of "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation" that may be occasioned by federal declaratory judgment actions involving issues simultaneously before a state court. *Ameritas*, 411 F.3d at 1330 (quoting *Wilton*, 515 U.S. at 495).

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Southern-Owners Insurance Company's Motion to Dismiss Count II of the Amended Complaint for Failure to State a Claim (Doc. 15) is **DENIED**.

2. WaterMark's Motion to Dismiss Southern-Owners' Counterclaim/Crossclaim (Doc. 21) and Defendant Oak Meadows' Motion to Dismiss (Doc. 63) are **GRANTED IN PART** and **DENIED IN PART**.

    a. The Motions are **GRANTED** to the extent they request Southern-Owners' requests for declaratory judgment as to its duty to indemnify be stayed;

    b. In all other respects, the Motions are **DENIED**.

3. The Court shall retain jurisdiction on the issue of Southern-Owners' duty to defend and WaterMark's reformation claim; however, the remainder of this action is hereby **STAYED** until the resolution of the underlying liability action.

4. WaterMark's Motion for Partial Final Judgment as to Apache (Doc. 64) is **DENIED WITHOUT PREJUDICE**.

**DONE AND ORDERED** in Orlando, Florida on March 13, 2018.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties